## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

SABUHI SARDARLI, Ph.D.                   )
3405 Churchill St.                       )
Manhattan, KS  66503                     )
                                         )
AYNURA ALAKBAROVA                        )
3405 Churchill St.                       )
Manhattan, KS  66503                     )
                                         )
        Plaintiffs,                      )
                                         )
v.                                       )    Civ. No.
                                         )
JEH JOHNSON, Secretary                   )
U.S. Department of Homeland Security     )
Washington, D.C.  20528                  )
                                         )
LEON RODRIGUEZ, Director                 )
U.S. Citizenship and Immigration Services )
Office of the Director MS 2000           )
20 Massachusetts Ave., N.W.              )
Washington, D.C.  20529                  )
                                         )
MARK J. HAZUDA, Director                 )
U.S. Citizenship and Immigration Services )
Nebraska Service Center                  )
P.O. Box 82521                           )
Lincoln, NE  68501                       )
                                         )
LORETTA E. LYNCH,                        )
Attorney General of the United States    )
U.S. Department of Justice               )
950 Pennsylvania Ave., N.W.              )
Washington, D.C. 20530                   )
                                         )
        Defendants.                      )
                                         )
_____)

## COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF

Plaintiffs by their undersigned lawyer allege as follows:

## I.  Parties

1.      Plaintiff Sabuhi Sardarli, Ph.D. ("Dr. Sardarli") is a citizen of Azerbaijan.  He is currently a resident of Manhattan, Kansas.  His address is 3405 Churchill St., Manhattan, KS 66503.

2.      Plaintiff Aynura Alakbarova ("Ms. Alakbarova") is a citizen of Azerbaijan.  She is currently a resident of Manhattan, Kansas.  Her address is 3405 Churchill St., Manhattan, KS 66503.  She is married to Dr. Sardarli and resides with him.

3.      Defendant Jeh Johnson is the United States Secretary of Homeland Security, the head of the United States Department of Homeland Security, an agency of the United States.  He is named in his official capacity.  His address is:  U.S. Department of Homeland Security, Washington, D.C. 20528.

4.      Defendant Leon Rodriguez is the Director of the United States Citizenship and Immigration Services ("USCIS"), which is part of the Department of Homeland Security and is an agency of the United States.  He is named in his official capacity.  His address is:  Office of the Director MS 2000, U.S. Citizenship and Immigration Services, 20 Massachusetts Ave., N.W., Washington, D.C. 20529.

5.      Defendant Mark J. Hazuda is the Director of the USCIS Nebraska Service Center, an agency of the United States.  He is named in his official capacity.  His address is:  U.S. Citizenship and Immigration Services, Nebraska Service Center, P.O. Box 82521, Lincoln, NE 68501.

6.     Defendant Loretta E. Lynch is the Attorney General of the United States.  She is named in her official capacity.  Her address is:  U.S. Department of Justice, 950 Pennsylvania Ave., N.W., Washington, D.C. 20530.

## II.  Jurisdiction and Venue

7.     This is an action to review administrative agency action of the U.S. Citizenship and Immigration Services.  The action arises under the Immigration and Nationality Act of 1952, as amended (the "Act"), 8 U.S.C. § 1101 et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 et seq.  Subject matter jurisdiction is based on 28 U.S.C. §§ 1331 and 1361 (mandamus).  This Court may grant relief pursuant to the Act, the APA, the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., 28 U.S.C. §§ 1361, and 28 U.S.C. § 1651 (the All Writs Act).

8.     Defendants Jeh Johnson, Leon Rodriguez, and Mark Hazuda had duties to act in conformity with the statute, the regulations, and the legislative history in adjudicating the adjustment of status applications filed by Dr. Sardarli and Ms. Alakbarova.

9.     Venue is proper in the United States District Court for the District of Columbia under 28 U.S.C. § 1391(e), because this is an action against officers and agencies of the United States in their official capacities, brought in the district where a substantial part of the events or omissions giving rise to the Plaintiffs' claim occurred.  The Defendant Jeh Johnson is sued in his official capacity as Secretary of the Department of Homeland Security (DHS), a United States federal agency and resident in this district.  The Defendant Leon Rodriguez is sued in his official capacity as Director of USCIS, a United States federal agency and resident in this district.  The Defendant Mark Hazuda is sued in his official capacity as Director of the USCIS Nebraska

Service Center, a United States federal agency.  Because national policy concerning adjudication

of applications for immigration benefits - including adjustment of status applications - is

formulated by the DHS and implemented by USCIS, venue is proper in this district.

### III.  Introduction and Legal Background

10.     This section of the complaint gives a brief introduction of what happened and

what is at stake, then a summary of the legal procedures involved.

11.     The USCIS denied the adjustment of status applications[1] filed by Dr. Sardarli and

his wife, Ms. Alakbarova, on September 8, 2015.  The basis of the denial of Dr. Sardarli's

application was that he was subject to the two-year foreign residence requirement of 8 U.S.C. §

1182(e) and he had not fulfilled said requirement.  The USCIS was required to deny Ms.

Alakbarova's adjustment of status application because her application was filed as an

accompanying derivative adjustment of status application under 8 U.S.C. § 1153(d).  If the

application of the principal is denied, the application of the derivative must also be denied under

8 U.S.C. § 1153(d).

12.     Many foreigners come to the United States as "J-1" exchange visitors ("J-1s").

This is a kind of nonimmigrant (temporary) classification, as set forth in 8 U.S.C. §

1101(a)(15)(J).

13.     Under 8 U.S.C. § 1182(e), there are three ways that a J-1 can become subject to

the two-year foreign residence requirement:  (1) the J-1 program is funded by the U.S.

Government or the J-1's Government; (2) the J-1 is engaged in training that is on the "Skills

List" for the home country; or (3) the J-1 is coming to the United States for graduate medical

---

[1]  Form I-485 applications for permanent residence (green card).

education.  The foreign residence requirement prohibits a J-1 from doing certain things, such as applying for permanent resident status (green card), until he has either fulfilled the requirement by spending an aggregate of two years in his home country, or until he has obtained a waiver of the requirement.

14.     Dr. Sardarli could only fulfill the requirement in Azerbaijan.  In particular, 8 U.S.C. § 1182(e) provides that a J-1 visitor subject to the requirement may fulfill it only in his country of "nationality or last residence," and "last residence" has consistently been interpreted by both the USCIS and the State Department to mean a country where the person had the equivalent of permanent resident status as of the time of first admission to the United States in J-1 status.

15.     As described with more specificity below, Dr. Sardarli became subject to the foreign residence requirement because he came to the United States in J-1 status on a program that was funded by the U.S. government.  In particular, his program was sponsored by the U.S. Department of State.

### IV.  Factual Allegations

16.     Dr. Sardarli first entered the United States on his J-1 visa on August 6, 2001, as a nonimmigrant exchange visitor under 8 U.S.C. § 1101(a)(15)(J) to participate in a one-year undergraduate exchange program.

17.     Dr. Sardarli's J-1 visa was sponsored by the U.S. Department of State.  As such, Dr. Sardarli was subject to the two-year foreign residence requirement on the basis of U.S. government funding.

18.     One may fulfill the two-year foreign residence requirement by residing and being physically present in the country of nationality or last residence for an aggregate of two years following departure from the United States.  See 8 U.S.C. § 1182(e).

19.     Dr. Sardarli departed the United States on June 12, 2002.  He returned to his country of nationality, Azerbaijan, before he returned to the United States on August 13, 2002 in F-1 visa status.  That stay in Azerbaijan accounted for approximately 62 days of fulfillment of the two-year foreign residence requirement.  Dr. Sardarli proceed to make 13 trips back to Azerbaijan over an approximately 10-year period, fulfilling the remainder of his two-year foreign residence requirement.  These trips occurred on the following dates:  June 5, 2003 arrival in Azerbaijan and return to the United States in F-1 status on August 6, 2003 (64 days of fulfillment time); June 5, 2004 arrival in Azerbaijan and return to the United States in F-1 status on August 19, 2004 (76 days of fulfillment time);  June 13, 2007 arrival in Azerbaijan and return to the United States in F-1 status on July 25, 2007 (43 days of fulfillment time); August 15, 2009 arrival in Azerbaijan and return to the United States in F-1 status on September 20, 2009 (37 days of fulfillment time); August 19, 2010 arrival in Azerbaijan and return to the United States in F-1 status on September 9, 2010 (22 days of fulfillment time); December 15, 2010 arrival in Azerbaijan and return to the United States in F-1 status on January 2, 2011 (18 days of fulfillment time); April 29, 2011 arrival in Azerbaijan and return to the United States in F-1 status on May 7, 2011 (9 days of fulfillment time); May 29, 2011 arrival in Azerbaijan and return to the United States in F-1 status on August 4, 2011 (68 days of fulfillment time); August 18, 2011 arrival in Azerbaijan and return to the United States in F-1 status on November 4, 2011 (80 days of fulfillment time); November 12, 2011 arrival in Azerbaijan and return to the United

States in F-1 status on January 6, 2012 (56 days of fulfillment time); January 15, 2012 arrival in Azerbaijan and return to the United States in F-1 status on May 2, 2012 (109 days of fulfillment time); December 17, 2012 arrival in Azerbaijan and return to the United States in F-1 status on January 4, 2013 (18 days of fulfillment time); and June 5, 2013 arrival in Azerbaijan and return to the United States in F-1 status on August 7, 2013 (63 days of fulfillment time).

20.     Dr. Sardarli changed his status from F-1 to H-1B visa status on December 2, 2013 under 8 U.S.C. § 1258(a).

21.     Dr. Sardarli again departed the United States for Azerbaijan and returned to the United States on the following dates: December 27, 2013 arrival in Azerbaijan and return to the United States in H-1B status on January 15, 2014 (21 days of additional fulfillment time); and March 9, 2014 arrival in Azerbaijan and return to the United States in H-1B visa status on March 21, 2014 (14 days of additional fulfillment time).  At this point, Dr. Sardarli had resided and was physically present in Azerbaijan for 763 days, which exceeds 730 days (two years).

22.     The fulfillment of Dr. Sardarli's two-year foreign residence requirement removed all of the legal disabilities associated with the requirement under 8 U.S.C. § 1182(e) and 8 U.S.C. § 1258.  These disabilities are (one subject cannot do the following under 8 U.S.C. § 1182(e)): (a) apply for H or L visa stamps; (b) apply for permanent resident status; and (c) apply for an immigrant visa.  The remaining disability under 8 U.S.C. § 1258 precluded a change of status from J to another nonimmigrant visa in the United States.

23.     Dr. Sardarli's wife, Ms. Alakbarova, returned with Dr. Sardarli in H-4 derivative status.  Both Dr. Sardarli and his wife are in valid H-1B and H-4 visa status (respectively).  Their status expires on November 30, 2016.

## V.  Adjustment of Status Application-History

24.     Dr. Sardarli and his wife, Ms. Alakbarova, filed applications for adjustment of status to that of a lawful permanent resident status on November 25, 2014.  Their applications were filed under 8 C.F.R. §§ 245.1(g), 245.2(a)(2)(i), which permits the concurrent filing of adjustment of status applications with a pending employment-based petition.  The statutory authority for these regulations is found in 8 U.S.C. § 1255.  The applications were based on an EB-2 I-140 employment-based petition that sought to classify Dr. Sardarli as an alien of the professions holding an advanced degree or as an alien of exceptional ability under 8 U.S.C. § 1153(b)(2).  Ms. Alakbarova's adjustment of status application was filed as a derivative of Dr. Sardarli's under 8 U.S.C. § 1255.

25.     Each adjustment of status application was filed with a copy of Dr. Sardarli's I-140 petition receipt notice, which was assigned receipt number LIN1590221779.  Dr. Sardarli's I-140 petition was ultimately approved on March 27, 2015.

26.     Both adjustment of status applications contained a properly completed I-485, Application to Register Permanent Residence or Adjust Status; Dr. Sardarli's I-140 receipt notice; G-325A, Biographic Information; I-693, Report of Medical Examination and Vaccination Record; birth certificate; marriage certificate, and filing fee of $1,070 for each application.

27.     Dr. Sardarli's adjustment of status application included a list of the dates he fulfilled his two-year foreign residence requirement as an addendum to the I-485, Page 3, Part 3.

- 8 -

That addendum stated that he spent an aggregate number of 743 days in Azerbaijan at the time the adjustment of status application was filed on November 25, 2014.  The application also included additional J-1 documentation with computations showing the dates of fulfillment of his two-year foreign residence requirement.

28.     Ms. Alakbarova's adjustment of status application included additional evidence of her marriage to Dr. Sardarli for the purpose of establishing her eligibility to file a derivative adjustment of status application.

29.     Dr. Sardarli's adjustment of status application was assigned a receipt number of LIN1590342646.

30.     Ms. Alakbarova's adjustment of status application was assigned receipt number LIN1590342647.

31.     Both cases were properly filed with the USCIS lockbox in Phoenix, Arizona, at USCIS, P.O. Box 21281, Phoenix, AZ 85036.

32.     The applications were transferred to the Nebraska Service Center at USCIS, P.O. Box 82521, Lincoln, NE 68501.

33.     Both Dr. Sardarli and his wife were statutorily eligible to seek to adjust their status to that of permanent residents.

34.     The adjustment of status applications filed by Dr. Sardarli and his wife complied with all statutory and regulatory requirements specified by the defendants.

35.     The adjustment of status applications filed by Dr. Sardarli and his wife were approvable as filed.

36.     More specifically, Dr. Sardarli had the burden of establishing that he was eligible

for the benefit sought.  <u>Matter of Brantigan</u>, 11 I. & N. Dec. 493 (BIA 1966).

37.     In terms of the burden of proof, the USCIS Adjudicator's Field Manual (USCIS

AFM) § 11.1(c) states:

> Once an applicant has met his or her initial burden of proof, he or
>
> she can be said to have made a "prima facie case." This means that
>
> the applicant has come forward with the facts and evidence which
>
> show that, at a bare minimum, and without any further inquiry, he
>
> or she has initial eligibility for the benefit sought. This does not
>
> mean that your inquiry is over. An alien may have established
>
> initial eligibility, but it is up to you to determine if there are any
>
> discretionary reasons why an application should be denied, or if
>
> there are any facts in the record (including facts developed during
>
> the course of the adjudicative proceedings, such as during an
>
> interview) which would make the applicant ineligible for the
>
> benefit. If such adverse factors do exist, it is again the applicant's
>
> burden to overcome these factors.

38.     Dr. Sardarli met his initial burden of proof that he had fulfilled his two-year

foreign residence requirement by asserting the dates he resided and was physically present in

Azerbaijan in the addendum to I-485 Page 3, Part 3.  Further, Dr. Sardarli met his initial burden

of proof by providing his immigration documentation substantiating the time he fulfilled his two-

year foreign residence requirement.  Said immigration documents were accompanied by date

computations for various periods of time spent in Azerbaijan.  As such, Dr. Sardarli made a

prima facie case that he had fulfilled his two-year foreign residence requirement under the

USCIS AFM § 11.1(c).

     39.     In terms of the standard of proof, the USCIS AFM § 11.1(c) states:

> The standard of proof should not be confused with the burden of
>
> proof. See Appendix 74-14. The standard of proof applied in most
>
> administrative immigration proceedings is the "preponderance of
>
> the evidence" standard. Thus, even if the director has some doubt
>
> as to the truth, if the petitioner submits relevant, probative, and
>
> credible evidence that leads the director to believe that the claim is
>
> "probably true" or "more likely than not," the applicant or
>
> petitioner has satisfied the standard of proof. See U.S. v.
>
> Cardozo-Fonseca, 480 U.S. 421 (1987) (defining "more likely than
>
> not" as a greater than 50 percent probability of something
>
> occurring). If the director can articulate a material doubt, it is
>
> appropriate for the director to either request additional evidence or,
>
> if that doubt leads the director to believe that the claim is probably
>
> not true, deny the application or petition.

     40.     Dr. Sardarli met the standard of proof through the assertion of the dates of

fulfillment coupled with the corroborating immigration documents and date computations.  Such

evidence was relevant, probative, and credible.  As such, Dr. Sardarli met the standard of proof

set forth in the USCIS AFM § 11.1(c).

41.   The USCIS Nebraska Service Center issued a request for evidence on Dr.

Sardarli's adjustment of status application on May 14, 2015.  The request for evidence states (in

pertinent part):

> The information provided in this application and/or contained in
>
> USCIS records establishes that you were admitted into the United
>
> States as a J-1 exchange visitor subject to the two year residence
>
> requirement of section 212(e) of the Immigration and Nationality
>
> Act (INA).  You must submit evidence showing ONE of the
>
> following:
>
> Note: to fulfill the two year residency requirement you must be
>
> residing in the home country and not just visiting.
>
> That you have resided and been physically present in the country of
>
> your nationality or last residence as indicated on your Form IAP-
>
> 66/DS-2019 for an aggregate of at least two years following your
>
> departure from the United States, OR
>
> That you have applied for and been granted a waiver of the two
>
> year foreign residence requirement, such as a copy of the waiver
>
> approval notice (Form I-797) issued to you by USCIS.

42.     The May 14, 2015 Request for Evidence (RFE) shows no indication that the adjudicator considered any of the evidence concerning the applicant's fulfillment of the two-year foreign residence requirement.

43.     The RFE is improper in that it does not acknowledge that the applicant made a prima facie showing of eligibility by presenting evidence that he had fulfilled his two-year foreign residence requirement and was thus eligible to apply to adjust his status to that of a permanent resident.

44.     The RFE is also improper in terms of the standard of proof in that the applicant submitted relevant, probative, and credible evidence that he was eligible for the benefit sought. More specifically, the adjudicator acted improperly in issuing the RFE without articulating a "material doubt," as the adjudicator is required to do under the USCIS AFM § 11.1(c).

45.     Dr. Sardarli, through previous counsel, responded to the RFE by submitting more evidence that further met the burden and standard of proof on July 8, 2015.

46.     In response to the RFE, Dr. Sardarli submitted an affidavit with additional, relevant, probative, and credible evidence that he fulfilled the two-year foreign residence requirement.  More specifically, he testified that: "When I have been physically present in Azerbaijan, I have also been residing there.  I consider Azerbaijan to be my residence."  He also testified:

> I understand that the term "reside" is not defined in the
>
> Immigration and Nationality Act.  However, the common use of
>
> the word is "to dwell permanently, or for the considerable time, to
>
> have one's settled or usual abode."  I have been a temporary

> student and then a temporary H-1B worker in the United States,
>
> with numerous temporary addresses.  My permanent, settled or
>
> usual abode is my home in Azerbaijan.  I have resided and been
>
> physically present in Azerbaijan for more than two years, which
>
> period can be cumulative under applicable rules.

July 7, 2015 Affidavit of Dr. Sardarli.

47.    In response to the RFE, Dr. Sardarli submitted the following documentation: (1) a letter from the Residency Registration Office[2] stating his address in Azerbaijan, and that he has had legal residency at that address from March 1995 to present; (2) a copy of a contract with a construction company dated July 25, 2011, to build an apartment for him in Baku, Azerbaijan (Dr. Sardarli also testified that he still owns the apartment); (3) an employer letter from the Azerbaijan National Academy of Sciences detailing internships he had in August and September of 2007 and 2009; (4) a letter from the Dean of the ADA University School of Business, in Baku, Azerbaijan, confirming a lengthy collaboration with the school, as well as the fact that he worked there full-time during the 2011-2012 academic year when he taught courses in Quantitative Skills, International Trade, and Finance; (5) a letter from the ADA University Human Resource Department confirming his faculty appointment from May 1, 2011, and April 30, 2012; (6) selected bank account statements from Azerbaijan from over the years; (7) student records from the University of Florida and the SEVIS[3] system, listing Azerbaijan as his permanent residence;

---

[2]  This letter was signed by Salimov Asif Muradkhan oglu, Head of Housing Communal Operations Office Number 47.

[3]  The Student and Exchange Visitor Information System (SEVIS) is used by DHS and the Department of State to "track and monitor schools; exchange visitor programs; and F, M, and

and (8) lease agreements from June 13, 2002 to March 21, 2014 showing that Dr. Sardarli leased properties in the United States while completing the two-year foreign residence requirement.

48.     The Immigration and Nationality Act (INA or 1952 Act) defines the word "residence" in 8 U.S.C. § 1101(a)(33) as follows:  "The term 'residence' means the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent."

49.     The legislative history to the 1952 Act makes clear that the INA's definition of "residence" is a codification of the term as expressed by the Supreme Court two years earlier in Savorgnan v. United States, 338 U.S. 491 (1950).  In that case, the Supreme Court articulated the test of residence as follows:  "The test of such 'residence' is whether, at any time during that period, she did, in fact, have a 'principal dwelling place' or 'place of general abode' abroad."  Id. at 506.  The Court went on state: "Her intent as to her 'domicile' or as to her 'permanent residence,' as distinguished from her actual 'residence,' 'principal dwelling place,' and 'place of abode,' is not material."  Id.  In reaching its conclusion on where the petitioner "resided," the Court considered testimony on where the petitioner lived during the times in question.

50.     Applying the Supreme Court's test, as codified in 8 U.S.C. § 1101(a)(33), Dr. Sardarli's testimony and corroborating documentation submitted with the RFE response establishes by the preponderance of the evidence that he resided in Azerbaijan during the times claimed in said testimony and in his adjustment of status application.  All of the evidence submitted by Dr. Sardarli meets the standard and the burden of proof set forth in the USCIS

_____

J nonimmigrants while they visit the United States and participate in the U.S. education system."
See *https://www.ice.gov/sevis* for more information on SEVIS.

- 15 -

AFM § 11.1(c) as to the question of whether he fulfilled his two-year foreign residence

requirement.

51.     The combination of the evidence submitted with Dr. Sardarli's adjustment of

status application and the RFE response established that Dr. Sardarli was entitled to the benefit

sought: adjustment of status to that of a permanent resident of the United States.  As such, the

adjustment of status applications should have been adjudicated after the additional evidence

submitted with the RFE was received.

52.     Instead of approving the adjustment of status applications upon receipt of the RFE

response, the USCIS issued a Notice of Intent to Deny (NOID) on July 21, 2015.

53.     The substantive portion of the July 21, 2015 NOID lists some of the evidence Dr.

Sardarli submitted in response to the RFE.  The NOID then states:

> . . . The only thing showing you resided and were physically
>
> present in the country of your nationality was the letter from ADA
>
> University School of Business.  This letter only shows you were
>
> physically present for one year.  The time as an Intern only shows
>
> you working for four months if counted.  That is still less than two
>
> years.

54.     The above quoted language shows that the USCIS arbitrarily and capriciously

abused its discretion because it disregarded the majority of the evidence of fulfillment that was

submitted with the initial adjustment of status application, as well as the majority of the evidence

submitted with the RFE response.  Specifically, with respect to the RFE response, the USCIS

ignored Dr. Sardarli's sworn affidavit and all other evidence submitted aside from the letter from the ADA University School of Business and documentation that he participated in an internship.

55.     Ignoring the majority of the evidence submitted in the RFE response, as well as in the adjustment of status application, is improper under the USCIS AFM § 11.1(c), because that section requires the USCIS to "articulate a material doubt," as to the credibility of the evidence submitted.

56.     The NOID goes on to state:  "You did not submit proof that you were physically present in the country of your nationality for two years.  The letter from the University shows you were physically present for one year. . . ."

57.     As set forth above, the first statement is false.  The second statement is incomplete in that it does not mention whether the letter from the university proved that Dr. Sardarli had resided for any particular period of time.

58.     The statement in the NOID that "The time as an Intern only shows you working for four months if counted," indicates that the USCIS had an improper predisposition to deny Dr. Sardarli's adjustment of status application.

59.     The NOID provided Dr. Sardarli with 33 days to respond.

60.     Dr. Sardarli, through previous counsel, responded to the NOID on August 20, 2015.  The response indicated that neither the RFE nor the NOID clarified how the evidence submitted in the original filing, which was further supplemented by the RFE response, did not fully establish eligibility.  It is USCIS policy to articulate why the evidence submitted does not fully establish eligibility.  See February 16, 2005 Interoffice Memorandum from William R.

Yates, Associate Director, Operations, Requests for Evidence (RFE) and Notices of Intent to

Deny (NOID).

61.    Dr. Sardarli's response to the NOID included a copy of all of the materials

submitted with the original adjustment of status application.

62.    Dr. Sardarli's response to the NOID also included the submission of new

documents further substantiating the fact that he had resided and been physically present in

Azerbaijan for an aggregate of two years following the conclusion of his initial J-1 program.

63.    The response to the NOID also included lawyer argument that the State

Department made a determination that Dr. Sardarli had a residence abroad in Azerbaijan before it

issued his F-1 visa.  Specifically, 8 U.S.C. § 1101(a)(15)(F)(i) required Dr. Sardarli to have a

residence in a foreign country which he has no intention of abandoning.

64.    The response to the NOID also included lawyer argument that the State

Department again found that Dr. Sardarli had fulfilled his two-year foreign residence requirement

when it issued him an H-1B visa stamp on January 9, 2014. Specifically, 8 U.S.C. § 1182(e)

prohibits the granting of an H-1B nonimmigrant visa to one subject to the two-year foreign

residence requirement.  More specifically, the State Department determined that Dr. Sardarli met

the requirements of 9 Foreign Affairs Manual § 40.202 N1.3, which states:

> In determining whether a former exchange visitor has resided and
>
> been physically present in the country of nationality or last legal
>
> permanent residence for an aggregate of at least two years upon
>
> completion of the exchange program and departure from the

United States, physical presence need not be continuous and may

be cumulative.

As such, the State Department would not have issued Dr. Sardarli an H-1B visa stamp if it was

not satisfied that he had fulfilled the two-year foreign residence requirement.

65.     The combination of the evidence presented in the adjustment of status application,

the RFE response, and the NOID response met the standard and burden of proof required by the

USCIS AFM § 11.1(c).  As such, the applicant met his burden of proof with respect to eligibility

and the adjustment of status application should have been favorably adjudicated upon receipt of

the additional evidence supplied in response to the NOID.

66.     On September 8, 2015, the USCIS issued a denial decision on Dr. Sardarli's

adjustment of status application.

67.     The main substantive part of the September 8, 2015 denial letter states:

In response, your attorney states that you do meet the two year

foreign residence requirement.  Specifically, your attorney focuses

on the verbiage that the two years may be in the aggregate and that

you have satisfied the requirement by a preponderance of the

evidence.  The wording of the law was changed from "continuous"

to "in the aggregate" in order to allow for brief visits to the United

States or other countries during the fulfillment of the two year

residence requirement.

68.     The statement that the wording of the law was changed from "continuous" to "in

the aggregate" is false and misrepresents the legislative history concerning the two-year foreign

- 19 -

residence requirement.  The word "continuous" was never part of the statute that was enacted in

1948, The Smith-Mundt Act of 1948, Pub. L. No. 80-402, 62 Stat. 6 (1948), the 1952

amendments in Pub. L. No. 82-414, § 402(f), 66 Stat. 163, 276-77 (1952), or the 1956

amendments at S. REP. No. 84-1608 (1956).  The word "continuous" or "continuously" never

made its way into the final version of the 1956 law.[4]  An earlier version of a Senate bill would

have barred an exchange visitor from acquiring an immigrant visa or adjusting status until such a

person had resided and "been *continuously* physically present in a cooperating country or

countries for an aggregate of at least 2 years following departure from the United States."  S.

2562, 84th Cong. (1955) (emphasis added).  That version of the bill was never enacted and the

word "continuous" or "continuously" was never included in any enacted version of the relevant

statute.

69.     The misstatement of the legislative history and the law indicates a predisposition

to deny the adjustment of status application.

70.     The denial letter then quotes 8 U.S.C. § 1101(a)(33): "The term 'residence' means

the place of general abode; the place of general abode of a person means his principal, actual

dwelling place in fact, without regard to intent."

71.     The denial letter then goes on to state:

The multiple trips to Azerbaijan do not establish a residence in

Azerbaijan.  USCIS records show that you were in the United

---

[4] Naomi Schorr and Stephen Yale-Loehr, THE ODYSSEY OF THE J-2: FORTY-
THREE YEARS OF TRYING NOT TO GO HOME AGAIN, 18 Geo. Immigr. L.J. 221, 224-31
(Winter 2004).

States on a J1 visa from July 6, 2001 through July 05, 2002, then

changed to an F1 visa July 12, 2002 through December 26, 2013. .

. .

72.    The first quoted sentence is a conclusory statement without any analysis. The

second sentence is false in that Dr. Sardarli did not change his status to F-1 visa status. Indeed,

he was subject to the two-year foreign residence at that time. Therefore, he was precluded from

filing a change of status application from J-1 to F-1 status under 8 U.S.C. § 1258(a)(3). Dr.

Sardarli departed the United States, applied for an F-1 visa stamp and returned to the United

States in F-1 student status.

73.    The denial letter continues:

. . . The record shows that the only time you left the United States

for an extended period of time was May 2011 through May 2012 as

a visiting professor in Azerbaijan. That was a period of one year

far short of the two year requirement. . . .

74.    The usage of the term "extended period" ignores the fact that Dr. Sardarli was

permitted to fulfill his two-year foreign residence requirement in the "aggregate." See 8 U.S.C. §

1182(e).

75.    The usage of the term "extended period" is an admission by the USCIS that it did

not count any other time that Dr. Sardarli spent in the Azerbaijan as fulfillment time. Not

counting such time is an abuse of discretion in that Dr. Sardarli was permitted to fulfill his two-

year foreign residence requirement in the aggregate under 8 U.S.C. § 1182(e).

76.     An interpretation that only an "extended period" of time is required to fulfill the

two-year foreign residence requirement is an abuse of discretion in that the statute permits

fulfillment time to be accumulated in the aggregate.

77.     The usage of the term "extended period" indicates a predisposition to improperly

disregard relevant, probative, and credible evidence of fulfillment time submitted by Dr. Sardarli

in contravention of the USCIS AFM § 11.1(c).

78.     The denial continues:

        . . . The Form G-325A that you signed on October 17, 2014, and

        submitted with your adjustment application states that you were

        residing in Florida from August 2009 through May 2011,

        Azerbaijan from May 2011 through May 2012, in Florida from

        May 2012 through August 2013, and in Kansas from August 2013

        to the present.

79.     The above statement ignores the evidence submitted with the adjustment of status

application that proved that Dr. Sardarli resided and was physically present in Azerbaijan for 743

days.  See Addendum to Form I-485 Page 3, Part 3 and additional corroborating evidence in the

administrative record.

80.     The G-325A is a biographical information sheet that asks the applicant to list

his/her residences for the past five years.  Dr. Sardarli listed five such addresses covering that

period of time.  The form only permits the entry of five addresses, including the applicant's

present address.

81.     Dr. Sardarli supplemented his addresses abroad in the adjustment of status

application, as well as in the responses to the RFE and the NOID.  These responses included

copious amounts of documentary evidence establishing that Dr. Sardarli resided and was

physically present in Azerbaijan for over two years following the completion of his J-1 program

and before the filing of his adjustment of status application.

82.     The record evidence submitted by Dr. Sardarli showing fulfillment of the two-year

foreign residence requirement was wholly ignored by the USCIS in adjudicating his adjustment

of status application in violation of the USCIS AFM § 11.1(c).

83.     The denial letter continues:

> Documentation submitted in the Response to the Intent to Deny has
>
> letters from each of the visits stating the applicant's address is in
>
> Azerbaijan.  Just because one has an apartment or house in another
>
> country does not mean that it is their residence.  See INA
>
> 101(a)(33) [8 U.S.C. § 1101(a)(33)] as stated above for the
>
> definition of "residence."  The absences from the time periods
>
> mentioned in the letters were just short visits.

84.     Interpreting 8 U.S.C. § 1101(a)(33) to conclude that fulfillment shown in

numerous letters did not count is improper under the definition established by the Supreme Court

in Savorgnan v. United States, 338 U.S. 491, 506 (195) and the legislative history behind 8

U.S.C. § 1101(a)(33) (H.R. REP. NO. 82-1365, at 33 (1952) because it disregards the test of

whether Dr. Sardarli did in fact, have a "principal dwelling place" or "place of general abode"

abroad.  The USCIS focused on intent as to Dr. Sardarli's "domicile" or as to "permanent

residence," as distinguished from his actual "residence," "principal dwelling place," and "place of abode," in direct contravention of the <u>Savorgnan</u> holding, as well as the legislative intent behind 8 U.S.C. § 1101(a)(33).

85.     Disregarding Dr. Sardarli's evidence of fulfillment is legally erroneous and an abuse of discretion.

86.     In terms of the quality of fulfillment, the State Department participated in a panel on J-1 issues at an American Immigration Lawyer's Association (AILA) annual conference.  The State Department has always taken the position that fulfillment could be achieved in the manner shown in Dr. Sardarli's adjustment of status application.  The USCIS has always been deferential to such State Department interpretations because the State Department has statutory responsibility for administering the J-1 program.  Furthermore, the State Department has special expertise in the program, policy, and foreign relations considerations that are part of the J-1 programs it administers.  For example the following question was posed at the 2001 AILA annual conference:

> Q.  Could you please say a few words on what the State
>
> Department recognizes for fulfillment of the two-year home
>
> residence requirement.  In other words, is it any type of stay in the
>
> home country post J-1?  Say a person finishes the program but then
>
> is here as an F or an O.
>
> 
>
> A.  The statute says the return requires residence and physical
>
> presence.  So if one returns home for two weeks for a vacation to a

residence abroad then that's two weeks out of the 104 weeks and

will satisfy the requirement . . . . Incremental is fine with me.  The

residence as far as I'm concerned, is defined by the statute under

101(a)(33), your place of general abode.[5]

87.     Under the above interpretation, Dr. Sardarli would be deemed to have fulfilled the

two-year foreign residence requirement prior to the filing of his adjustment of status application.

88.     In 1998 the USIA (predecessor agency to the State Department Waiver Review

Division) expressed the following view towards fulfillment:

19.  Would USIA please confirm that a former exchange visitor

who is a Canadian citizen and therefore visa exempt, may comply

with the two year home residence requirement by living in Canada

and working in the United States?  In this scenario, the former

visitor has a home in Canada, children attend school in Canada,

taxes are paid in Canada, health insurance paid in Canada and all

other ties are in Canada, and the only U.S. tie is employment in the

U.S. in H-1B status.

19.  Yes, USIA confirms this [again].[6]

---

[5]  The answer was provided by Stephen K. Fischel, Director, Office of Legislation,
Regulations and Advisory Assistance, Visa Office, U.S. Department of State, on the panel "J-1
Programs and Waivers," at the 2001 AILA Annual Conference (conference tape no. 5) held in
Boston, Massachusetts (Summer 2001).

[6]  Draft Liaison Meeting Minutes between AILA and the USIA (Oct. 30, 1998) available
at *http://www.aila/org/infonet* (document no. 98103090).

89.     Under the above interpretation, Dr. Sardarli would be deemed to have fulfilled the two-year foreign residence requirement prior to the filing of his adjustment of status application.

90.     The policies on fulfillment of the two-year foreign residence requirement represented the general policy and practice of both the USCIS and the State Department since the time of these policy pronouncements.

91.     On information and belief, the USCIS changed its internal policies and standards in the adjudication of evidence of fulfillment of the two-year foreign residence requirement.  But the relevant statutes have not changed.  The regulations have not changed.  And there has been no public announcement of any such change.

92.     In the instant case, the USCIS did not provide a reasoned analysis indicating that prior policies and standards of adjudication are being deliberately changed, as it is required to do under general principles of administrative agency law.  See, e.g., Greater Boston Television Corp. v. FCC, 444 F.2d 841, 852 (D.C. Cir. 1970).

93.     Ms. Alakbarova's adjustment of status application was denied on September 8, 2015 because her applicantion was dependent on her husband's application under 8 U.S.C. § 1153(d).

94.     There is no administrative appeal from the September 8, 2015, decisions.

95.     The plaintiffs have exhausted their administrative remedies.

96.     The September 8, 2015 denials by the USCIS are irrational and contrary to the statutory standards of the APA and the Immigration and Nationality Act, the Department of Homeland Security and State Department regulations, the intent of Congress in enacting the J-1 two-year foreign residence requirement, and to the due process of law—in that it fails to consider

all of the facts relevant to the decision, discuss any change in policy relevant to the decision, or demonstrate that it properly considered the relevant, probative, and credible evidence submitted by Dr. Sardarli to demonstrate he fulfilled the two-year foreign residence requirement.

97.     The adjustment of status applications are meritorious and should be approved.

## VI.  Irreparable Injury

98.     Absent approval of the adjustment of status applications, plaintiffs will suffer irreparable injury.

99.     Dr. Sardarli is present in the United States in H-1B nonimmigrant visa status.  His status is good through November 30, 2016.  Ms. Alakbarova is in derivative H-4 status good through November 30, 2016.

100.    H-1B and H-4 derivative status can be sought in two three-year increments for a total of six years of H nonimmigrant visa status.  If the adjustment of status applications are not favorably adjudicated, Dr. Sardarli's employer will be forced to extend Dr. Sardarli's H-1B visa status.  By extension, it would also need to extend Ms. Alakbarova's H-4 status.

101.    It is not clear whether the USCIS would approve such an extension given the USCIS' erroneous finding that Dr. Sardarli is presently subject to the two-year foreign residence requirement.  Specifically, if the USCIS maintains that Dr. Sardarli is subject to the two-year foreign residence requirement, it could take the position in the extension applications that the original grant of the H-1B visa by the State Department was improvident.  See 8 U.S.C. § 1182(e).

102.    Given the position of the USCIS on Dr. Sardarli's adjustment of status application, the USCIS could revoke Dr. Sardarli's present H-1B visa status on the basis that his

H-1B status was improvidently granted because of the USCIS position that he remains subject to the two-year foreign residence requirement.  That would immediately place both Dr. Sardarli and Ms. Alakbarova out of status.

103.    Dr. Sardarli is currently employed by Kansas State University Department of Finance.  A denial of a future H extension petition would disrupt Kansas State's ability to run that academic department.

104.    A denial of a future H extension petition would disrupt Dr. Sardarli's career activities and advancement, causing great harm to the public interest of the United States.  Such a disruption may permanently and irreparably damage his career.

<div align="center">

**COUNT ONE:  ABUSE OF DISCRETION**

**<u>AND VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT</u>**

</div>

105.    Paragraphs 1 through 104 above are repeated and realleged as though fully set forth herein.

106.    The defendants's denial of Dr. Sardarli's and Ms. Alakbarova's adjustment of status applications are contrary to the statutory standards, the regulations, the legislative history, and the intent of Congress, and it is therefore arbitrary and capricious, because the defendants failed to consider all the evidence in the record before rendering a decision, ignored substantial evidence in the record without any rational basis, failed to weigh the evidence presented concerning the fulfillment of Dr. Sardarli's two-year foreign residence requirement, and/or failed to state a valid reason for the denial.

107.    The defendants's adjudication of the adjustment of status applications is contrary to the statutory standards, the regulations, the legislative history, and the intent of Congress

because there is no evidence that the defendants reviewed the relevant, probative, and credible

evidence in the administrative record, and the defendants failed to provide valid explanation for

their decision to ignore volumes of evidence in the adjustment of status application.

108.    The defendants acted outside the scope of discretion granted by Congress.

109.    The defendants's denial of the adjustment of status applications therefore violates

the Administrative Procedure Act, 5 U.S.C. §§ 555(b), 702, and 706(1), and otherwise

constitutes abuse of discretion.

### COUNT TWO:  DUE PROCESS VIOLATION (PROPERTY INTEREST)

110.    Paragraphs 1 through 109 above are repeated and realleged as though fully set

forth herein.

111.    Dr. Sardarli and Ms. Alakbarova have a property interest in the application fees

that they paid to the USCIS.

112.    The defendants's denial of the adjustment of status applications without proper

consideration of all record evidence and the failure to provide any rational basis for such

ignorance of evidence violates the plaintiffs's right to due process of law under the Fifth

Amendment to the United States Constitution.

### COUNT THREE:  FAILURE TO PROVIDE REASONED ANALYSIS DESCRIBING A MARKED CHANGE IN POLICY IN THE ADJUDICATION OF BENEFIT APPLICATIONS WHERE EVIDENCE OF THE FULFILLMENT OF THE TWO-YEAR FOREIGN RESIDENCE REQUIREMENT IS PRESENT

113.    Paragraphs 1 through 112 above are repeated and realleged as though fully set

forth herein.

114.     Courts have held that an agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed.  See Greater Boston Television Corp. v. FCC, 444 F.2d 841, 852 (D.C. Cir. 1970).

115.     The State Department has always taken the position that fulfillment could be achieved in the manner shown in Dr. Sardarli's adjustment of status application.  The USCIS has always been deferential to such State Department positions given the State Department has statutory responsibility for administering J-1 programs.

116.     The defendants's denial of Dr. Sardarli's waiver application without explaining the change in policy and standards violates federal decisional law that mandates such explanations.

## COUNT FOUR:  DECLARATORY JUDGMENT

117.     Paragraphs 1 through 116 above are repeated and realleged as though fully set forth herein.

118.     This Court has authority to issue a declaratory judgment regarding the rights, privileges, and duties of the parties under 28 U.S.C. § 2201.

119.     This Court should declare that Dr. Sardarli fulfilled his two-year foreign residence requirement prior to the filing of his adjustment of status application.

120.     This Court should issue a declaratory judgment establishing that Dr. Sardarli and his wife were both eligible to file adjustment of status applications at the time their applications were filed.

121.     This Court should declare that the defendants's adjudication of the adjustment of status application without a review of all evidence submitted and without stating a rational basis

for failing to consider all submitted evidence is contrary to the statutory standards, regulations, legislative history, congressional intent, and due process of law.

122.    This Court should declare that Dr. Sardarli and Ms. Alakbarova have a property interest in the application fees that they paid to the USCIS.

123.    This Court should declare that the defendants's denial of the adjustment of status applications without considering all submitted evidence and without providing a rational basis for the exclusion of evidence violates the plaintiffs's right to due process of law under the Fifth Amendment to the United States Constitution.

124.    This Court should declare that the USCIS has a duty to explain its change in policy and standards with respect to the adjudication of the quality of fulfillment of the two-year foreign residence requirement.

125.    This Court should declare that the USCIS should approve the adjustment of status applications effective the date of the issuance of the RFE or May 14, 2015.  The basis for this is that Dr. Sardarli's and Ms. Alakbarova's adjustment of status applications were approvable as filed.  A later approval date would prejudice both plaintiffs because they will need to wait longer to file naturalization applications.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiffs pray for the following relief:

A.    Declare the defendants' adjudication of the adjustment of status applications to be in violation of the statute, regulations, legislative intent, agency procedures, and the Constitution;

B.    Declare that the plaintiffs are statutorily eligible to apply for adjustment of status to that of permanent residents;

C.      Declare that the defendants's denial of the adjustment of status applications was

unlawful, arbitrary and capricious, contrary to the statute, regulations, legislative history,

congressional intent, and in violation of the Constitution;

D.      Declare that the adjustment of status applications are meritorious and should be

approved with an effective date of May 14, 2015;

E.      Order the defendants to grant the adjustment of status applications with an

approval date of May 14, 2015;

F.      Grant an award of attorneys's fees and costs; and

G.      Grant such other relief as the Court may deem just and proper.

Dated: January 21, 2016

<div style="margin-left:40%">

/s/ Brian C. Schmitt
BRIAN C. SCHMITT
Hake & Schmitt
P.O. Box 540 (419 Main St.)
New Windsor, Maryland  21776
(410) 635-3337
Attorney for Plaintiffs
Bar No.: MD0023

</div>